IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KATHY L. JONES, | : | CASE No. 3:11 CV 2084 |
| Plaintiff, | : | |
| v. | : | |
| ECONOMIC OPPORTUNITY PLANNING ASSOCIATION OF GREATER TOLEDO, a.k.a. LUCAS COUNTY HEAD START | : : : | MEMORANDUM DECISION & ORDER |
| Defendant. | : | |

## I. INTRODUCTION.

In accordance with the provisions of 28 U.S.C. 636(c) and FED. R. CIV. P. 73, the parties in this case have consented to have the undersigned United States Magistrate Judge conduct any and all further proceedings including entry of final judgment (Docket No. 14).  Pending is Defendant's Motion for Summary Judgment, to which Plaintiff filed an Opposition and Defendant filed a Reply (Docket Nos. 24, 26 & 27).  For the reasons that follow, the undersigned Magistrate Judge grants the Motion for Summary Judgment.

## II. JURISDICTION

Pursuant to 28 U. S. C. § 1331, this district court has original jurisdiction in Plaintiff's actions arising under the Americans with Disability Act (ADA), the Family Medical Leave Act

(FMLA) and Title VII of the Civil Rights Act of 1964 (Title VII).  Under 28 U. S. C. § 1367, the Court invokes supplemental jurisdiction over Plaintiff's state claims of disability, gender and race discrimination.

### III. THE PARTIES

Plaintiff, an African American female, is a resident of Toledo, Lucas County, Ohio.  Plaintiff was employed by Defendant from December 1992 through June 16, 2011 (Docket No. 1, ¶ 2).

Defendant, a nonprofit corporation duly organized under the laws of the State of Ohio, is the designated Community Action Agency in Lucas County, Ohio, that provides preschool education for low and moderate income children.  At all times relevant to these proceedings, Defendant was an employment entity with more than 50 employees (Docket No. 23, ¶ 3; http://www.eopa.org

### IV. FACTUAL BACKGROUND.

#### A.  PLAINTIFF'S DEPOSITION TESTIMONY.

In 1985, Plaintiff received an associate's degree in business (Docket No. 25-1, p. 7 of 177).  On December 8, 1992, Defendant employed Plaintiff as a bus driver.  In 1998, she became a transportation dispatcher (Docket No. 24-1, pp. 3, 4 of 36; Docket No. 25-1, pp. 7, 10 of 177).  In 2001, she was promoted to transportation supervisor (Docket No. 24-1, pp. 5-6 of 36).  As supervisor, Plaintiff worked 48 weeks annually, 40 hours weekly (Docket No. 24-1, p. 10 of 36).

Plaintiff was promoted to transportation manager on January 19, 2007.  Two supervisors, a transportation specialist, a dispatcher, and a mechanic supervisor, all reported to Plaintiff.  In that position, she worked 52 weeks a year, 40 hours weekly (Docket No. 24-1, pp. 9, 14, 15 of 36; Docket No. 25-1, p. 16 of 177).  Plaintiff categorized fellow managers who also worked 52 weeks annually, by position, gender and race:

2

| Position | Gender | Race/National Origin |
|----------|--------|----------------------|
| Facilities | Male | Caucasian |
| Health | Female | African American |
| Mental Health | Female | African American |
| unknown | Female | Canadian |
| unknown | Female | Hispanic |
| Education | Female | African American |
| Social Services | Female | ? |
| Nutritionist | Female | Caucasian |

(Docket No. 24-1, pp. 11, 12, 13 of 36).

In January or February 2011, Plaintiff attended a meeting during which a discussion was held about the number of weeks the managers would work.  The board of directors and representatives from the human resources department decided that all mangers except the sole Caucasian male manager, would work 48 weeks annually, not 52 weeks annually ( Docket No. 25-1, pp. 17, 18, 19, 20 of 177).

In May 2011, three mechanics and three supervisors were suspended for selling scrap metal to OmniSource (Docket No. 24-1, pp. 14, 18, 19 of 36; Docket No. 25-1, p. 42 177).  During their suspension, Plaintiff was on bereavement leave.  A letter terminating Plaintiff's employment was prepared by the Deputy Director of Special Services (DDSS) Patricia McGreevy on May 27, 2011.  Delivery of this termination letter was delayed until Plaintiff completed her bereavement leave (Docket No. 24-4).

Plaintiff returned to work on June 2, 2011, and on Friday, June 3, 2011, Plaintiff was confronted about her attending a luncheon which was paid for from the proceeds from the sale of

3

the scrap metal (Docket No. 24-1, pp. 21, 22 of 36).  Noticing the onset of depressive symptoms on June 3, 2011, Plaintiff presented to her primary care physician for treatment on Monday, June 6, 2011.  With her physician's diagnosis of anxiety and depression, Plaintiff presented her request for FMLA leave by calling the human resources department, not particularly Ms. McGreevy.  Rolanda Key, a human relations specialist under the supervision of Jack Hackett, approved the request for FMLA.   Ms. Key was unaware that Plaintiff had been terminated at the management but that the dismissal had not been communicated to Plaintiff at the time Ms. Key  granted the request for FMLA leave (Docket No. 24-1, pp. 25, 26 & 27; Docket No. 25-3, pp. 3, 23, 24 of 107).  Consequently, on June 10, 2011, Ms. Key approved Plaintiff's FMLA leave request, granting her up to twelve weeks against her leave entitlement.  On June 16, 2011, Plaintiff was officially advised that she was terminated.  On June 24, 2011, Plaintiff was advised by Jack Hackett that because of her termination dated June 16, 2011, her FMLA status was null and void and she would be receive her normal and customary sick pay (Docket No. 24-1, pp. 32, 34-35 of 36; Docket Nos. 24-5, 24-6, 24-7).

On or about July 22, 2011, Plaintiff filed a charge for discrimination against Defendant alleging that because of her disability, gender and/or race, the terms and conditions of her employment were changed and she was wrongfully discharged with the Equal Opportunity Commission (EEOC)/Ohio Civil Rights Commission (OCRC).  In simplest terms, Plaintiff explained that she was discharged because she "is a black female over 50."  She also considered herself a disabled individual, having anxiety and depression impairments that substantially limited one or more of her major life activities (Docket No. 23 and Docket No. 24-1, p. 29 of 36).

      **B**.    **DEPOSITION TESTIMONY OF PATRICIA MCGREEVY, MANAGER OF THE TRANSPORTATION DEPARTMENT.**

4

Ms. McGreevy became manager in 2002 and she was Plaintiff's direct supervisor when she became a transportation manager in 2007 (Docket No. 25-2, p. 12 of 57). Plaintiff was a good employee. In fact, her performance appraisal ratings were all "very good" during her tenure at EOPA (Docket No. 25, p. 13 of 57). However, when Head Start underwent budget reductions, the number of weeks that Plaintiff, the disabilities/mental health manager and the nutrition manager, worked per year was reduced to 48. Neither the social services manager nor the facilities manager suffered a reduction in number of weeks worked. The social services manager was needed to maintain federally required enrollment and the facilities manager was needed to renovate a new building that EOPA possessed (Docket No. 24-2, pp. 3, 4, 5, 6 of 18; Docket No. 25-2, p. 13 of 57).

Ms. McGreevy explained that during May 2011, the mechanic supervisors each received a five-day suspension for their participation in the luncheon. They were suspended, not discharged, because they had a lower level of responsibility and accountability within the department. Mechanic Rick Hovey was given a three-day suspension because he was authorized to sell the scrap metal but he was not authorized to appropriate the proceeds from the sale for his own use (Docket No. 24-2, pp. 7, 8, 9, 15-16 of 18; Docket No. 25-1, p. 43 of 177). Ms. McGreevy recommended that Plaintiff be terminated for two reasons. First, Plaintiff denied on more than one occasion that she had no knowledge about the scrapping and later she admitted that had not been truthful. Second, Plaintiff participated in the luncheon that was paid for with the proceeds from the sale of the scrap (Docket No. 24-2, p. 15 of 18).

C.     DEPOSITION TESTIMONY OF JACK HACKETT, DIRECTOR OF HUMAN RELATIONS.

Mr. Hackett was hired on January 4, 2010 (Docket No. 25-3, p. 9 of 107). In a letter dated

February 11, 2011, Mr. Hackett advised Plaintiff that due to budgetary constraints, her yearly schedule was adjusted to 48 weeks per year (Docket No. 25-3, p. 11 of 107).

Mr. Hackett confirmed Ms. McGreevy's contention that initially Plaintiff denied that she had any knowledge that the proceeds of the sale from the scrap had been converted to the personal use of EOPA employees, specifically in the transportation department.  She even put her denial in writing.  During the second interview, she admitted having lunch paid for by the proceeds from the sale of scrap and knowing that the sale proceeds funded the lunch  (Docket No. 25-3, pp. 17, 27-28 of 107).  Plaintiff was ultimately discharged because she knew about the sale of the scrap but was not forthcoming with her knowledge (Docket No. 25-3, pp. 24-25 of 107).

### V.  THE LEGAL NATURE OF PLAINTIFF'S CLAIMS.

Considering these facts, Plaintiff claims that Defendant:

1.  Interfered with her right to exercise FMLA benefits.
2.  Discriminated against her on the basis of disability, a violation of ADA and OHIO REV. CODE § 4112.02(a)(13).
3.  Discriminated against her on the basis of gender, a violation of Title VII of the Civil Rights Act of 1964 and OHIO REV. CODE § 4112.02.
4.  Discriminated against her on the basis of race, a violation of Title VII of the Civil Rights Act of 1964 and OHIO REV. CODE § 4112.02.

### VI.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Defendant claims entitlement to judgment as a matter of law because Plaintiff has failed to come forth with the requisite proof to support her legal claim and defeat the Motion for Summary Judgment.  Plaintiff's claims fail because she cannot establish:

1.  The necessary elements of either a FMLA claim rooted in either retaliation or discrimination.
2.  A causal connection between the exercise of her rights under FMLA and her termination.
3.  A prima facie case for disability discrimination.
4.  That she is disabled within the meaning of ADA.

6

5.    A prima facie case for employment discrimination.
6.    That her discharge was pre-textual.
7.    A prima facie case for gender or race discrimination.

### VII. STANDARD FOR REVIEWING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Max Arnold & Sons, LLC v. W.L. Hailey & Company, Incorporated*, 452 F.3d 494, 498 -499 (6th Cir. 2006) (*citing* FED. R. CIV. P. 56(c)). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* (*citing Celotex Corporation v. Catrett*, 106 S.Ct. 2548 (1986)). The Court must view the facts and all of the inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 106 S.Ct. 1348 (1986) (citation omitted)). This Court is not permitted to weigh the evidence or determine the truth of any disputed matter, but rather determines only whether evidence exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Kleinser v. Bay Park Community Hospital*, 793 F.Supp.2d 1039, 1043 (N.D.Ohio, 2011) (*citing Anderson v. Liberty Lobby, Incorporated*, 106 S.Ct. 2505, 2510-2511 (1986)).

### VIII. ANALYSIS.

While the first claim for relief in the First Amended Complaint alleged a FMLA violation, the second claim for relief raised a disability discrimination claim under Ohio law, the third claim alleges a claim for sex discrimination under Ohio law, the fourth claim raises an issue of race discrimination, the fifth claim is asserted under ADA, and the sixth and seventh claims–sex

7

discrimination and race discrimination, respectively, are asserted under Title VII.

1.    **CLAIM ONE- FMLA**
      A.    **PLAINTIFF'S CLAIM.**

Plaintiff reiterates that Ms. Key established that she was entitled to twelve weeks of leave.

She contends that Defendant's unlawful termination interfered with her right to exercise leave under

FMLA.

      B.    **THE FMLA FRAMEWORK**

Claims rooted in the FMLA generally seek relief under two theories:  interference and

retaliation.  *Kleinser, supra,* (*citing Hoge v. Honda of America Manufacturing, Incorporated*, 384

F.3d 238, 244 (6th Cir.2004)).  Under an interference theory, a plaintiff must establish:

    (1)    she is an eligible employee for purposes of the Act;
    (2)    the defendant is an employer subject to the FMLA's requirements;
    (3)    the employee was entitled to FMLA leave benefits by virtue of meeting certain criteria;
    (4)    the employee provided adequate notice of her intent to invoke FMLA leave benefits; and
    (5)    the defendant denied the employee FMLA benefits to which the employee was entitled.

*Id.* (*citing Cavin v. Honda of American Manufacturing, Incorporated*, 346 F.3d 713, 719 (6th Cir. 2003)).

By contrast, a retaliation claim is marked by a plaintiff who engages in FMLA protected

activity with his or her employer's knowledge, and then suffers an adverse employment action that

has a causal link to the employee's invocation of FMLA leave.  *Id.* (*citing Killian v. Yorozu

Automotive Tennessee, Incorporated*, 454 F.3d 549, 556 (6th Cir. 2006)).  Each theory, therefore,

requires a demonstration that the defendant attempted to frustrate the FMLA-protected rights to

unpaid leave or reinstatement.  *Id.* (*citing Arban v. West Publishing Corporation*, 345 F.3d 390, 401

(6th Cir.2003)).

8

The Sixth Circuit applies the familiar burden-shifting test articulated in *McDonnell Douglas Corporaton v. Green,* 93 S.Ct. 1817 (1973), to retaliation claims under the FMLA. *Edgar v. JAC Products, Incorporated*, 443 F.3d 501, 508 (6th Cir. 2006) (*See Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309, 313-316 (6th Cir. 2001) (applying the burden-shifting analysis to a FMLA-retaliation suit)).  The employee can make out a prima facie case of discrimination by showing that:

> (1)  the employee availed herself or himself of a protected right under the FMLA by notifying the employer of the intent to take leave,
> (2)  the employee suffered an adverse employment action, and
> (3)  that there was a causal connection between the exercise of her or his rights under the FMLA and the adverse employment action.

*Id.* (*See Skrjanc*, 272 F. 3d at 314 (setting forth this framework); *Rodriguez v. Ford Motor Company*, 382 F.Supp.2d 928, 933 (E.D.Mich.2005) (applying this test to a retaliatory-discharge claim under the FMLA)).  If the employee satisfies these three requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee.  *Id.* (*citing Skrjanc,* 272 F.3d at 315).

**C.    APPLICATION OF THE LAW TO PLAINTIFF'S FMLA CLAIM.**
**1.    PLAINTIFF'S INTERFERENCE CLAIM.**

With respect to Plaintiff's interference claim, Plaintiff argues that terminating her employment constituted an unlawful interference with her right guaranteed under FMLA.  Assuming that Plaintiff can demonstrate that she was an eligible employee for purposes of the Act; that Defendant was an employer subject to the FMLA's requirements; that she was entitled to FMLA leave benefits by virtue of meeting certain criteria; that she provided adequate notice of her intent to invoke FMLA leave benefits; the credible and un-rebutted evidence establishes that Defendant did not deny Plaintiff FMLA benefits to which she was entitled.  Defendant did not impose any

9

obstacles to granting Plaintiff's request for FMLA leave.  Clearly, Plaintiff cannot make a prima facie claim for violation of FMLA by means of unlawful interference.  Defendant is entitled to summary judgment on this claim.

      2.      **PLAINTIFF'S RETALIATION CLAIM.**

The facts in this case and FMLA's statutory scheme weigh strongly in favor of rejecting Plaintiff's argument that she was discharged for exercising her rights.  Plaintiff has not borne the burden of showing a causal connection between her discharge and the exercise of her rights.  If given the opportunity to produce evidence of a pretext, the temporal proximity of the letter terminating Plaintiff's employment on May 27, 2011 to Plaintiff's request for leave submitted on June 6, 2011, fails to show that the granting of leave was a motivating factor in her discharge.  Based purely on these particularized facts, Plaintiff cannot make out a prima facie case for a retaliatory discharge claim for exercising employee rights under FMLA.  Defendant is entitled to summary judgment on this claim.

**2.      CLAIMS TWO & FIVE–DISABILITY DISCRIMINATION**
      **A.      PLAINTIFF'S CLAIMS.**

Plaintiff's second claim is that she was terminated because she was disabled.  Alternately, she was regarded as disabled within the meaning of the ADA.  Plaintiff's fifth claim is that she was wrongfully terminated because she was disabled within the meaning of OHIO REV. CODE § 4112.02(a)(13).

      **B.      DISABILITY FRAMEWORK UNDER ADA AND OHIO REV. CODE § 4112.02.**

The Ohio Supreme Court has held that the coverage of OHIO REV. CODE § 4112.02(A) is identical to the coverage of federal law prohibiting discrimination in the employment context.  *Hout v. City of Mansfield,* 550 F.Supp.2d 701, 726 (N.D. Ohio, 2008).  Thus, evidence sufficient to

support a finding of discrimination under the ADA is necessary before a violation of Section 4112.02(A) can be shown.  *Id.* (*citing Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981)).

The ADA prohibits a covered employer from discriminating against a qualified individual on the basis of disability in regard to "job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions and privileges of employment.".  42 U.S.C. § 12112(a) (Thomson Reuters 2012).  Similar to the ADA's general prohibition, Ohio law makes it unlawful for an employer, "because of the . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  OHIO REV. CODE § 4112.02(A) (Thomson Reuters 2012).

Under ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1) (Thomson Reuters 2012).  Similarly, a disability under Ohio law is "a physical or mental impairment that substantially limits one or more major life activities . . . ; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."  OHIO REV. CODE § 4112.01(A)(13) (Thomson Reuters 2012).  "Major life activities" include: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i) (Thomson Reuters 2012).  The Equal Employment Opportunity Commissioner has defined "substantially limits" to mean:

    (i)    Unable to perform a major life activity that the average person in the general population can perform; or

      (ii)     Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (Thomson Reuters 2012).

      An individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was mis-classified as having had such an impairment. 29 C. F. R. § 1630.2(k) (Thomson Reuters 2012).  In determining whether an impairment substantially limited a major life activity, the principles articulated in paragraph (j) of this section apply.  29 C. F. R. § 1630.2(k) (Thomson Reuters 2012).  The EEOC interpretive guidelines as well as case law indicate that an ADA plaintiff must demonstrate that the "record" relied upon by the defendant showed that the past impairment in fact "substantially limited" the plaintiff in a major life activity.  *MX Group, Incorporation v. City of Covington*, 293 F.3d 326 (6th Cir. 2002) (analyzing "record of" prong under Title II of the ADA).

      The regarded-as-disabled prong of the ADA "protects employees who are perfectly able to perform a job, but are rejected  . . .  because of the myths, fears and stereotypes associated with disabilities."  *Daugherty v. Sajar Plastics, Incorporated*, 544 F.3d 696, 703 (6th Cir. 2008) (*citing Gruener v. Ohio Casualty Insurance Company*, 510 F.3d 661, 664 (6th Cir. 2008) (internal citations and quotation marks omitted).  Individuals may be regarded as disabled when " '(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities.' "  *Id*. at 703-704 (*quoting Sutton v. United Air Lines*, 119 S.Ct. 2139, 2149 (1999)).  In either case, it is necessary

12

to show that the employer entertains misperceptions about the employee.  *Id*.

      **C.**      **APPLICATION OF THE LAW TO PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS.**

The essential elements of the comprehensive scheme detailing the requirements for compliance with an ADA claim are identical to the elements of Ohio's anti-discrimination statute at OHIO REV. CODE § 4112.01. Consequently, the Magistrate addresses Plaintiff's disability discrimination claims simultaneously under ADA and Ohio's disability discrimination laws.

In the face of Defendant's properly supported Motion for Summary Judgment, Plaintiff cannot rest on her allegations to get to the jury; she must produce significant probative evidence tending to support her claim that she was discharged because she was regarded as having a disability.  In support of her proposition, Plaintiff presented an affidavit to supplement the arguments made in her other pleadings.  In the affidavit, Plaintiff was explicit:  she suffered from vertigo; she was depressed as the result of her mother's death; and that her depression affected her ability to sleep, focus, eat, work, breathe and read during periods of anxiety (Docket No. 26-1).  Plaintiff testified in her deposition that she became depressed on Friday and was treated by her primary care physician on the following Monday.  Apparently her physician felt her depression severe enough to authorize leave for medical reasons.

Giving significant leeway in balancing her reaction to grief against the ADA's anti-discrimination mandate, Plaintiff suffered temporary impairments without the long-term substantial impact contemplated under ADA or OHIO REV. CODE.  Plaintiff's assertions fail to comply with the demanding standard for establishing disability which requires that she present probative evidence of substantial limitations in her ability to perform major life activities resulting from her impairments that the average person in the general population could perform.  The allegations in the

13

affidavit are not sufficient to create a genuine issue of material fact as to the threshold matter of whether Plaintiff is disabled or was regarded as disabled under the ADA or the OHIO REV. CODE.

Plaintiff makes a blanket assertion that her employer knew that she had an impairment; but she does not demonstrate that the "record" relied upon by the defendant showed that the past impairment in fact "substantially limited" Plaintiff in a major life activity.  Neither has she proven that Defendant mistakenly believed that Plaintiff had a mental impairment that substantially limited one or more of her major activities.  Defendant's mere knowledge or awareness of an employee's condition does not constitute a record of disability absent some evidence that the employee suffered from an impairment that "substantially limited" the plaintiff in a major life activity.  The "record of impairment" provisions" do not cover Plaintiff because she fails to identify or present probative evidence that she remains vulnerable to the alleged fears and stereotypes of her employer from a previous disabling condition.

Because Plaintiff failed to establish a prima facie case for discrimination based on disability, Defendant is entitled to summary judgment on these claims.

**3.    PLAINTIFF'S CLAIMS THREE AND SIX–Gender discrimination.**
      **A.    PLAINTIFF'S CLAIMS.**

Plaintiff asserts that summary judgment should be denied because a similarly situated white male retained his work schedule of 52 weeks per year while she was "cut back" to 48 weeks per year and that ultimately, she was terminated because of her gender.  Because she was qualified and performed her job well, Plaintiff deduces that the reduction in weeks worked must have been the result of discrimination based on her gender.

14

B.     LEGAL FRAMEWORK FOR GENDER DISCRIMINATION.

It is unlawful in Ohio for any employer, because of the sex of any person, to discharge that person without just cause, or to otherwise discriminate against that person with respect to terms and conditions, privileges or other matters directly or indirectly related to employment.  *Kimble v. Intermetro Industries,* 288 F. Supp.2d 876, 879 (N.D.Ohio,2003) (*citing* OHIO REV. CODE § 4112.02(A)).  Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee on the basis of sex.  42 U.S.C.A.2000e-2 (Thomson Reuters 2012).  The Ohio Supreme Court has held that the scope and coverage of OHIO REV. CODE § 4112.02(A) is identical to the scope and coverage of federal law prohibiting discrimination in the employment context.  *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 726 (N.D.Ohio 2008).  Thus, evidence sufficient to support a finding of discrimination under Title VII is necessary before a violation of Section 4112.02(A) can be found.  *Kimble, supra*, 288 F. Supp. at 879 (*citing Plumbers & Steamfitters Joint Apprenticeship Commission v. Ohio Civil Rights Commission*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981)).

In *McDonnell Douglas Corporation v. Green*, 93 S.Ct. 1817 (1973), the Supreme Court set forth the framework for analyzing cases alleging workplace discrimination based on indirect evidence.  *Hoskins v. Oakland County Sheriff's Department*, 227 F.3d 719, 731 (6th Cir. 2000).  Using the *McDonnell Douglas* paradigm, in order to establish a prima facie case of gender discrimination under Title VII, the plaintiff bears the burden of establishing by a preponderance of the evidence, a prima facie case by demonstrating that:

(1)     she was a member of a protected class;
(2)     she suffered an adverse employment action;
(3)     she was qualified for the position; and
(4)     she was treated differently from similarly situated members of the unprotected class.

15

*Knox v. Neaton Auto Products Manufacturing, Incorporated*, 375 F.3d 451, 456-457 (6ᵗʰ Cir. 2004) (*See McDonnell Douglas*, 93 S.Ct. at 1824; *Hoskins, supra*, 227 F.3d at 731; *citing Warfield v. Lebanon Correctional Institution*, 181 F.3d 723, 728-29 (6ᵗʰ Cir. 1999)).

If the plaintiff establishes his or her prima facie case, then an inference of discrimination arises. *Hoskins*, *supra,* 227 F.3d at 731. At that point the burden of production shifts to the employer, who must set forth a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Id*. (*citing Warfield, supra,* 181 F. 3d at 729). The plaintiff then has the opportunity to demonstrate that the employer's proffered reason for taking the adverse action was pre-textual. *Id*. To so demonstrate, the plaintiff must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Id*. (quotation omitted) (alterations in original)).

### C. APPLICATION OF THE LAW TO PLAINTIFF'S CLAIMS OF GENDER DISCRIMINATION.

Because of the similarity of standards, the Magistrate addresses Plaintiff's federal and state-law claims of gender discrimination simultaneously.

Plaintiff is a member of a protected class who was performing a job for which she was qualified but suffered an adverse employment action initially by having her hours reduced and subsequently being terminated; however, a white male manager's weekly schedule was not reduced and no males were terminated following the scrap sale incident. Although she has established the first three prongs of a prima facie case, Plaintiff failed to establish the fourth prong by showing that she was treated differently from a similarly situated member of the unprotected class. Even if Plaintiff were to establish a prima facie case for gender discrimination, she could not prevail. Under the *McDonnell Douglas* burden-shifting analysis, Defendant offered legitimate, nondiscriminatory

16

reasons for reducing her annual hours and the decision to terminate Plaintiff, including the goal of reducing annual hours to achieve budget savings and the expectation that Plaintiff's position as manager involved providing positive direction for other employees. Defendant further proffered as reasons for terminating Plaintiff that she was not truthful about her knowledge of the conversion of proceeds from the sale of scrap by other employees and that proceeds from the sale of the scrap were used to purchase her lunch. When the burden of production shifted to Plaintiff, she failed to go beyond the pleadings and her own affidavit to designate specific facts that create a genuine issue for trial. Consequently, Defendant is entitled to summary judgment on the issue of gender discrimination.

**4.** **CLAIMS FOUR AND SEVEN–RACIAL DISCRIMINATION.**
    **A.** **PLAINTIFF'S CLAIMS.**

Plaintiff asserts that summary judgment should be denied because a similarly situated white male retained his work schedule of 52 weeks per year while she was "cut back" to 48 weeks per year. Because she was qualified and performed her job well, the adverse employment action taken by Defendant was the result of discrimination based on her race.

    **B.** **LEGAL FRAMEWORK FOR DISCRIMINATION BASED ON RACE.**

As previously indicated, the Ohio Supreme Court has adopted the federal courts' Title VII analysis when deciding employment discrimination claims under the Ohio Civil Rights statute. *Derungs v. Wal-Mart Stores, Incorporated*, 374 F.3d 428, 434 (6th Cir. 2004) (*See Plumbers & Steamfitters, supra*, 66 Ohio St.2d at 196, 421 N.E.2d at 131; *see also Peters v. Lincoln Electric Company,* 285 F.3d 456, 469 (6th Cir. 2002)).

A plaintiff pursuing race discrimination claims under Title VII and OHIO REV. CODE § 4112.02 may prevail in one of two ways: by presenting either direct or indirect evidence to prove

that his or her employer was motivated by a race-based animus when it took an adverse employment action against him.  *Jones v. Kilbourne Medical Laboratories*, 162 F.Supp.2d 813, 824 (S.D.Ohio, 2000).  Absent direct evidence of discrimination, a plaintiff must proceed under the burden-shifting, indirect evidence approach set forth in *McDonnell Douglas Corporation*, *supra,* 93 S.Ct. at 1824.  Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination.  *Id.* at 824-825 (*citing Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992); *citing McDonnell Douglas*, 93 S.Ct. at 1824.

> To establish a prima facie case, the plaintiff must show:
>
> (1)  that he or she is a member of a protected class;
> (2)  that he or she was qualified for his position;
> (3)  that he or she suffered an adverse employment action; and
> (4)  that for the same or similar conduct she or he was treated differently than similarly-situated non-minority employees or that she or he was replaced by someone outside of the protected class.

*Id.* (*citing Mitchell*, *supra*, 964 F. 2d at 582; *see also Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825 (6th Cir. 2000)).  Seeking to compare himself or herself to other "similarly-situated" employees, the plaintiff must show that these "comparables" are similarly-situated "in all of the relevant aspects." *Id.* (*citing Ercegovich v. Goodyear Tire & Rubber Company*, 154 F.3d 344, 352 (6th Cir.1998), (*quoting Pierce v. Commonwealth Life Insurance Company*, 40 F.3d 796, 802 (6th Cir.1994)).  In other words, similarly-situated employees generally "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (*citing Mitchell*, 964 F.2d at 583).

If the plaintiff establishes a prima facie case, an inference of discrimination will arise.  *Id.*

18

The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for his or her discharge. *Id.* (*citing McDonnell Douglas*, 93 S.Ct. at 1824). If the employer articulates such a reason, the plaintiff then will bear the burden of proving (or, in the present context, demonstrating a genuine issue of material fact) that the stated nondiscriminatory reason for the adverse employment action against him is pre-textual. *Id.* (*See Mitchell*, *supra*, 964 F.2d at 584 n. 6). Specifically, the plaintiff will be required to show that the asserted reason has no basis in fact, that the reason did not actually motivate the adverse employment action, or that it was insufficient to motivate such action. *Id.* (*citing Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078, 1084 (6th Cir.1994); *see also Reeves v. Sanderson Plumbing Products, Incorporated*, 120 S.Ct. 2097 (2000) (holding that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification was false, may permit a fact finder to conclude that the employer unlawfully discriminated)).

### C.   APPLICATION OF THIS LAW TO PLAINTIFF'S RACIAL DISCRIMINATION CLAIMS.

The Magistrate concludes that Plaintiff has not presented any direct evidence that Defendant took an adverse employment action against her because of her race and she cannot establish a prima facie case under *McDonnell Douglas.* With respect to the indirect-evidence approach, Defendant does not contest that Plaintiff was a member of a protected class, that she was qualified for this position and that she suffered an adverse employment action. Plaintiff, however, has not shown that for the same or similar conduct she was treated differently than similarly-situated non-minority employees or that she was replaced by someone outside of the protected class. Stated differently, Plaintiff has failed to demonstrate that the transportation manager who replaced her was a white male under 40 years of age or that the white male manager with whom she was similarly situated

19

while employed by Defendant, lied about his knowledge of the sale of scrap, used the proceeds from the sale to purchase lunch, and then Jack Hackett did not fire him.  In short, Plaintiff has failed to create a rebuttable presumption of discrimination or to show that her discharge was a ruse to hide racial discrimination.

Construing the facts and all reasonable inferences in a light most favorable to Plaintiff, the Magistrate cannot conclude that Defendant took adverse employment action against Plaintiff on the basis of race, in violation of either Title VII or OHIO REV. CODE § 4112.02.  Based on this analysis, Defendant is entitled to summary judgment as to claims four and seven.

## IX. CONCLUSION.

Based on the reasoning and citation of authority set forth above, the Magistrate Judge grants the Motion for Summary Judgment and dismisses all of the federal and state claims in Plaintiff's First Amended Complaint.

IT IS SO ORDERED.

/s/Vernelis K. Armstong
United States Magistrate Judge

Date:   February 5, 2013